## MASON *vs.* BRISTOL.

If one selectman may, in any case, lawfully place the official signature of another to a contract, he cannot do so in the absence of the other, and without any express direction; and no assent can be presumed.

ASSUMPSIT, to recover the expenses incurred in the support of one Maria Hobart, alleged to be a pauper, and have her settlement in Bristol, founded upon a special contract, alleged to have been made by the defendants. To prove the contract, the plaintiffs offered in evidence the following writing, viz.:

"Bristol, July 5, 1836.

*To the Selectmen of Mason*—Gentlemen : Your letter of the 22d ult., respecting Maria Hobart, has been duly received. We have no doubt that Maria Hobart, daughter of Jeremiah Hobart, Jr., late of Bristol, if a pauper, is chargeable to Bristol. We wish you to continue to furnish said Maria until she can be removed, and write us respecting her disease, and when she can probably be removed to Bristol, and we will take measures to remove her to Bristol, and pay you all reasonable bills. Please to inform us what she has cost, and what the expense is per week now. Respectfully yours,

Samuel T. W. Sleeper, ⎱ *Selectmen*
N. S. Berry,         ⎰ *of Bristol.*"

It was proved that said Sleeper and Berry were selectmen of Bristol for the year 1836. It appeared that both the signatures to said letter were in the hand writing of the said Berry, who was introduced as a witness, on the part of the plaintiffs, and testified that the selectmen of Bristol, having received a letter from the selectmen of Mason, relating to said Maria, Sleeper advised him to write a letter to the selectmen of Mason, making enquiries on the subject; but that nothing was said by Sleeper about making the promise, as contained in said letter; and that he signed Sleeper's name to said letter, feeling authorized so to do by what he understood

to be the practice among the selectmen of that town in former years, he having formerly been one of the selectmen. It was objected by the defendants that the letter was not admissible as evidence to the jury; but the objection was overruled, and the letter admitted.

No evidence other than the foregoing was offered to prove a contract on the part of Bristol; and it was objected by the defendants, that the foregoing evidence was insufficient to prove such contract—because said letter was not signed by a majority of the selectmen of Bristol—because in said letter the selectmen do not profess to act in behalf of the town, or stipulate in the name of the town, or use any appropriate language to bind the town—because the selectmen of Bristol had no power to bind the town by such contract—and because the evidence shows a contract with the selectmen of Mason, and not with the plaintiffs.

A verdict having been returned for the plaintiffs, the defendants moved for a new trial.

*Atherton*, for the defendants, cited 2 *N. H. R.* 352, *Underhill* vs. *Gibson;* 3 *N. H. R.* 38, *Hanover* vs. *Eaton;* *Ditto* 290, *Lee* vs. *Deerfield;* 2 *N. H. R.* 251, *Sanborn* vs. *Deerfield.*

*Farley,* for the plaintiffs, cited 7 *N. H. R.* 298, *Andover* vs. *Grafton;* 1 *N. H. Laws* 453; 3 *N. H. R.* 38; 1 *Pick. R.* 123, *Belfast* vs. *Leominster;* 1 *D. & E.* 674, *Unwin* vs. *Wolseley; Ditto* 172, *Macbeath* vs. *Haldimand;* 9 *Mass. R.* 335, *Mann* vs. *Chandler.*

Green, J. In *Hanover* vs. *Eaton,* 3 *N. H. R.* 38, it was held that the selectmen, being *ex officio* overseers of the poor, may bind the town by a contract not to take advantage of any defects in a notice, given by another town, that a pauper has been relieved. And in *Andover* vs. *Grafton,* 7 *N. H. R.* 298, it was decided that selectmen have power to bind their

town by a promissory note, given for the support of a pauper legally chargeable upon the town; and that they may do this for support furnished by the selectmen of another town where the pauper is resident, notwithstanding no legal notice has been served on them, provided the term has not expired in which such notice may be given.

But it is unnecessary to decide what would have been the effect in this case, had the letter or contract offered in evidence been signed by a majority of the selectmen of Bristol, because it appears that it was in fact signed by only one of them, and that he put the name of the other there without any authority.

Nor is it necessary to consider whether one selectman can, in any case, confer authority on another to put his official signature to a contract, in his absence, and thereby bind the town. 7 *N. H. R.* 305.

There was here no attempt to give such authority : but, on the contrary, Sleeper, whose name was signed, only advised writing a letter making enquiries.

If a general practice has existed among the selectmen of Bristol in former years to place the official signatures of each other to papers affecting the town, we are not aware of any law which justifies such a practice, and it cannot avail the plaintiffs in this case.

It has been contended by the plaintiffs that being signed by one of the selectmen, the assent of the others may be presumed, for which *Lee* vs. *Deerfield*, 3 *N. H. R.* 290, has been cited. But the decision in that case was, not that the assent of the other selectmen may generally be presumed to the acts of one of their number, but only that it may be so to an order for furnishing supplies to a pauper, actually in need of relief. In *Andover* vs. *Grafton* it was said that this principle could not be applied to written contracts, or official signatures; and in *Woodes* vs. *Dennett, Strafford, December term*, 1837, we held that no such assent could be presumed, where the pauper was not at the time within the town; be-

cause in such case there was not, at the time, any existing duty to furnish supplies, requiring the action of the selectmen. (9 *N. H. R. 55.*)

The case last cited may, perhaps, be an authority to show that Berry, who signed the paper, has made himself personally liable ; but his act alone cannot bind the town, and there must be a

*New trial.*